ALLEN, Acting Chief Judge.
An interlocutory appeal has been taken from an order of the circuit court denying appellants’ motion to dismiss appellees’ third amended complaint. This case in essence involves a suit collaterally attacking a final decree quieting title to certain lands, which decree was entered in 1955 by the same court.
Appellants here were defendants in the lower court in the instant case. In the 1955 suit, appellant Betty Sheffield, etc., was the successful plaintiff in quieting title to the lands involved. Appellants Lowery and wife and Robinson and wife were not parties to the 1955 suit. They are involved here, however, since the Lowerys acquired the lands in question from Betty Sheffield after title was quieted and have since conveyed them to the Robinsons.
Appellees, Carter and wife, were plaintiffs below in the instant case. In the 1955 suit they were two of several defendants over whom jurisdiction was obtained by constructive service of process in the form of publication. They made no appearance in said cause.
The facts of the instant case insofar as they are germane to the question presented on appeal are set forth and detailed as follows with antecedent reference to the 1955 suit incorporated where called for.
Appellees, Paul Cook Carter and wife, Maude Cannon Carter, filed their suit against Betty Sheffield, individually, and as Administratrix of the Estate of John W. Sheffield, deecased, James O. Lowrey and wife, Annie E. Lowrey, and William L. Robinson and wife, Caroline E. Robinson, to set aside a decree to quiet title and fix boundaries.
In their Third Amended Complaint they alleged in paragraph IV that Betty Sheffield, individually, and as Administratrix of the Estate of John W. Sheffield, filed a bill of complaint against Paul Cook Carter and Maude Cannon Carter, his wife, and others, to quiet title to certain property; that a final decree was entered in said suit October 18, 1955, and was recorded in Chancery Order Book 487, page 99, public records, which decree purported to quiet the title in the plaintiff to certain described property; and that certified copies of the pleadings in said suit brought by Betty Sheffield were attached and made a part of the complaint as plaintiffs’ Exhibit 1.
The plaintiffs alleged that said decree entered in 1955 was, on its face, null and *782 void for reasons set forth in the bill of complaint, alleging in paragraph VIII of said bill :
“That the bill of complaint in the suit of Betty Sheffield on its face is ineffectual to give the court any jurisdiction of the parties or the subject matter of said suit or any decree affecting the lands therein described for the following reasons:
“(a) That in the said bill of complaint it was alleged that the residence of the defendants, Paul Cook Carter and Maude Cannon Carter was unknown to the Plaintiff, as well as the fact as to whether said defendants were alive or dead; that in truth and in fact, Paul Cook Carter and Maude Cannon Carter were residents of the Town of Wimauma, County of Hills-borough and State of Florida, and had been residents thereof for more than 14 years prior to the filing of said suit and that their residence was approximately one-half mile of the residence of Betty Sheffield and had been so for a long period of time prior to the filing of said suit, and that both Paul Cook Carter and Maude Cannon Carter were, on the date of the filing of said suit, well known to Betty Sheffield. The plaintiff, Paul Cook Carter has continuously operated sawmills within the close vicinity of Wimauma and maintained a place of business and a listed telephone in Wimauma, Florida, continuously for many years, employing in said business 20 or 30 men the year round, and it was well known in Hillsborough County, Florida, as well as Manatee County, Florida, and was operating the same on October 12, 19S5, and was operating a saw mill at the time of the filing of said Sheffield Suit.
“Notwithstanding that the said Betty Sheffield as plaintiff in said purported suit by her attorney, E. Glenn Grimes, had long lived in sight of the home of the plaintiffs herein and had once delivered the Tampa Morning Tribune to plaintiff’s said home over a long period of time and collected therefor and well knew the plaintiffs and each of them, she alleged subjunctively and evasively in the body of the initial pleading in her said suit or complaint No. 100,642, as follows :
“ ‘She does not know and has not been able to ascertain by diligent search and inquiry the residence of the above named defendants including the defendants Paul Cook Carter and wife, Maude Cook Carter, and whether said defendants or either of them are alive or dead and if alive, are over or under the age of twenty-one years.’ ”
In the above paragraph it was further alleged that the bill of complaint was not sworn to by the plaintiff but was sworn to by one of the attorneys for the said Betty Sheffield; that the affidavit was, on its face, faulty, untrue and evasive; that it did not give the basis or prerequisites for the order authorizing service by publication on the Carters; and that it failed to comply with the statutes authorizing service by publication.
The Carters further alleged that the defendants Lowrey and Robinson were not bona fide purchasers for value in sequence from Betty Sheffield in that they were put on notice that the Sheffield decree was void because of the defective constructive process issued in the case.
In the Sheffield bill to quiet title, suit No. 100642-C Hillsborough County, Betty Sheffield, individually and as Administratrix of the estate of John M. Sheffield, deceased, filed her complaint against F. A. McIntosh, if alive, and if dead, against the person or persons whose name or names and respective ages and places of residence is and are unknown to the plaintiff and her attorneys of record, and various other defendants unnecessary to name since none are involved in this suit except the Carters. Betty Shef *783 field, in her 1955 complaint, alleged in reference to the Carters:
“ * * * Paul Cook Carter, if alive, and if dead, against the spouse, unknown heirs, legatees, devisees, grantees, assignees, lienors, creditors, trustees, or other claimants who claim an interest, by, through, under or against the said Paul Cook Carter, whose name or names and respective ages and places of residence is and are unknown to the Plaintiff and her attorneys of record; Maude Cannon Carter, if alive, and if dead, against the spouse, unknown heirs, legatees, devisees, grantees, assignees, lienors, creditors, trustees, or other claimants, who claim an interest by, through, under or against the said Maude Cannon Carter, whose name or names and respective ages and places of residence is and are unknown to the Plaintiff and her attorneys of record and against all persons having or claiming any interest in the following described land, to-wit: * * * ”
Thereafter plaintiff Sheffield alleged:
“1. That the Plaintiff is the widow of John M. Sheffield, deceased, and is the duly qualified and acting adminis-tratrix of the estate of said John M. Sheffield.
“2. That during the lifetime of the said John M. Sheffield, he, the said John M. Sheffield, joined by the Plaintiff, his wife, entered into a contract with James O. Lowery and Annie E. Lowery, as husband and wife, under the terms and provisions of said contract, the said John M. Sheffield covenanted and agreed to sell to the said Lowerys, the land hereinabove described upon payment of the purchase price stipulated and set forth in said contract and that after the execution of said contract, but before the sale was consummated and closed, the said John M. Sheffield died intestate.
“3. The Plaintiff further shows unto the Court that the Honorable William C. Brooker, County Judge in and for Hillsborough County in which County the estate of the said John M. Sheffield is being administered, signed an Order authorizing the Plaintiff as said Administratrix to employ the firm of Grimes, Grimes, Attorneys at Law, to present and maintain this suit for the purpose of Quieting the Title to the lands above described and embraced in said contract of sale in order that the said contract might be carried out and performed and merchantable title conveyed to the said purchasers, James O. Lowery and Annie E. Lowery.”
Plaintiff Sheffield in paragraph 4 of her 1955 complaint alleged her dower interest in the property subject to the contract of sale and her legal title to said land in her official capacity as administratrix for the purpose of carrying out and performing said contract for and on behalf of her husband’s estate.
In paragraph 5 she alleged that:
“5. The plaintiff further shows into the Court and alleges that she and her husband, the said John M. Sheffield were in the actual physical possession of the land above described at the time of his death, which occurred March 2, 1955 and the Plaintiff further alleges that her said husband and his predecessors in title, had been in actual physical possession of the above described land for more than seven years, next last past, prior to the filing of this Bill of Complaint and alleges that his possession was continuous, hostile, notorious, uninterrupted and adverse to the Defendant and each of them for more than seven years, and that the Plaintiff herein has continued in the possession of said land in the same manner since her husband’s death down to the present time in her own right and in her official capacity.”
Mrs. Sheffield then proceeded to allege the normal allegations necessary to prove possession, such as fencing, cultivation, -etc.
*784 In paragraph 10 she alleged that she believed the following persons to be interested in the subject matter of the quiet title proceedings: Paul Cook Carter, Maude Cannon Carter and others and stated that she did not know and had not been able to ascertain by diligent search and inquiry the residence of the above named defendants and whether said defendants or either of them were alive or dead and if alive, were over or under the age of twenty-one years.
In paragraph 11 Mrs. Sheffield alleged her belief that there were persons who were or may have been interested in the subject matter of the suit or proceedings whose names, after diligent search and inquiry, were unknown to the plaintiff or her attorneys of record and that the said unknown parties claimed as heirs of the Carters and others.
Paragraph 12 set forth the allegation that the names and places of residence of all persons interested in the lands in question so far as were known to the plaintiff or that she could ascertain by diligent search and inquiry, had been stated in the complaint with as much particularity as was known to Mrs. Sheffield or her attorneys.
Paragraph 13 of the Sheffield complaint alleged plaintiff’s belief that there were persons interested in the land involved whose names, ages and places of residence were unknown to the plaintiff and her attorneys of record and that they had made diligent search and inquiry for the names of such unknown persons and could not obtain them.
The complaint was signed Grimes & Grimes by E. Glenn Grimes. The following sworn affidavit follows the signature of the attorneys.
“STATE OF FLORIDA: “COUNTY OF MANATEE:
“Before me personally appeared E. Glenn Grimes, one of the attorneys of record for Plaintiff in the foregoing Bill of Complaint, who being first duly sworn, says that the allegations of said Bill of Complaint are true as alleged.
/s/ E. Glenn Grimes”
The defendants, James 0. Lowery and Annie E. Lowery, included in their answer to the complaint filed by the Carters in the instant case, the following motion.
“1. The Third Amended Complaint fails to state a cause of action against these defendants.
“2. The Third Amended Complaint shows that as to Plaintiffs the Final Decree in Suit No. 100,642-C on the Chancery Docket of this Court is not void, and the Third Amended Complaint fails to allege facts to sustain any claim that these Defendants are not bona fide purchasers for value of the property involved in said suit.”
The circuit judge entered his order denying the defendants’ motion to dismiss as follows:
“This cause came on to be heard upon the motions contained in the answers filed by the Defendants to Plaintiffs’ 3rd amended complaint. The Court heard argument of counsel and has examined the excellent briefs filed’ by counsel of all parties. From this argument and examination of the law,, the Court finds that the alleged affidavit for constructive service contained in the bill of complaint in the case of Sheffield v. McIntosh, et al. does not. contain a sworn statement as contemplated by Section 48.03, et seq. and that the failure to have this proper sworn, statement was a jurisdictional defect, and was a recorded warning to subsequent purchase[rs] from the Sheffields. Therefore it is
“ORDERED, ADJUDGED and DECREED that the Defendants’ motions-to dismiss the Plaintiffs’ 3rd amended complaint be and the same are hereby-denied.”
*785 Appellants have assigned as error the failure of the lower court to test the Sheffield complaint against § 66.18, F.S.A., which expressly provides for service by publication in quiet title suits. The pertinent provisions therein read:
“66.18 Quieting title; additional remedy, bill, notice, etc. — The complainant shall set forth in his complaint his claim of title and the names and places of residence of all persons interested in the land, so far as known to the complainant or he can ascertain by diligent search and inquiry and where the names or persons interested or the places of residence are unknown and have not been ascertained after diligent inquiry the complaint shall so state, and in all cases shall be sworn to; * * * ” (Emphasis supplied.)
Our Supreme Court, in the case of Tibbetts v. Olson, 1926, 91 Fla. 824, 108 So. 679, had before it the 1925 Act to Quiet Title (Chapter 11383, Laws of Florida, 1925, Ex. Sess.), which includes the predecessor of present § 66.18, where, among other questions, the Supreme Court was confronted with constructive service where the attorney for the complainant swore to the truth of the allegations in the complaint. See also McDaniel v. McElvy, 1926, 91 Fla. 770, 108 So. 820, 51 A.L.R. 731, opinion filed the same day.
The opinion of the Court does not detail the allegations of the complaint. In the instant case, however, the appellants have placed in their appendix a copy of the complaint that was filed in the Tibbetts case, certified by the Clerk of the Supreme Court of Florida. An examination of the complaint shows the following allegations on which constructive service is prayed.
“And your orator would further show unto your Honor that he does not know and has not been able to ascertain whether either of the said John Tell and Mary Tell, Defendants named in this Bill, is dead or alive, adult or infant and what is the residence or whereabouts of the said parties; therefore your orator believes that there are unknown parties claiming some interest in the lands herein described under either or both of the said John Tell and Mary Tell, but that your orator does not know and has not been able to ascertain the name or residence, or age, or location of either or of any of the said parties.
“And your orator would further show unto your Honor that he believes that there are other parties, who are wholly unknown to your orator, claiming an interest in the said land described in this Bill, adverse to the claim of your orator; * * * ”
The plaintiff did not swear to the bill of complaint but one of the named solicitors for the complainant swore to the following affidavit:
“Before me an officer duly authorized to administer oaths, this day personally came * * *, who being by me first duly sworn says that he is one of the Solicitors for the Complainant in the foregoing cause and that he is one of the Solicitors signing the foregoing Bill of Complaint and that the matters and things therein alleged are true and correct.”
Syllabus No. 2 of the opinion in Tibbetts v. Olson, supra, states:
“Complainant in suit to quiet title or clear cloud thereform is entitled to order of publication or notice to appear on filing complaint sworn to by himself, his agent, or attorney, alleging facts entitling him to relief, and when complaint meets statutory requirements.”
Syllabus No. 11 states:
“Allegations of complaint to quiet title need not be sworn to by complainant; bill of complaint to quiet title asking service by publication may be sworn to either by complainant, his agent, or his attorney; complaint to quiet title asking service'by publication *786 should be sworn to by one who can honestly and truthfully subscribe to oath * *
The Supreme Court, in its opinion in the Tibbetts case, states:
“ ‘ * * * The said bill of complaint prayed for process of personal service to issue to the known defendant and for an order of publication, service to be directed to the unknown defendants. The solicitors for the complainant swore to the bill of complaint. The bill of complaint set out that the complainant did not know and had not been able to ascertain whether either of the unknown defendants named in the bill of complaint was dead or alive, adult or infant, a resident or nonresident party, and therefore that it was the belief of the complainant that the said unknown parties and each of them were and was absent, concealed, and nonresident. * * * ’»
The clerk of the court refused to issue constructive service and, upon application to the circuit judge, the circuit judge also refused and gave the reasons therefor. The seventh ground stated by the lower court is:
“ ‘Seventh. It is doubtful to the court whether the bill of complaint can be properly sworn to by counsel, or whether it must be verified by the complainant himself.’ ”
The Supreme Court commented that the case could properly be disposed of by consideration of only the third ground upon which the court declined to make the order of publication, but that there were many important questions presented by the contents of the order of the court complained of, and that the Supreme Court could render a valuable service to the bench and bar of the State of Florida by considering each of the reasons ascribed by the chancellor. Ihe Court, in its opinion, then further states:
“A complainant in a suit in chancery for the quieting of, or clearing a cloud from, title is entitled to an order of publication or notice to appear when he has filed a bill of complaint, sworn to by himself, his agent or attorney, alleging such facts as will entitle him to relief in a court of chancery, and when the bill of complaint meets the requirements of section 3 of House Bill No. 296, Laws of Florida, approved November 30, 1925, * *
Subsequently the Court said:
“The seventh ground of the order questions the propriety of the bill being sworn to by the attorney instead of being attested by the oath of the complainant. The statute does not require the allegations to the bill to be sworn to by the complainant, and when all statutes of this state in regard to constructive service by publication are considered together, it is clear that a bill of complaint in such cases may be sworn to by either the complainant, his agent or his attorney. The oath is not a mere formality, however, and should only be made by one who can honestly and truthfully subscribe to the same.”
We comment in passing that a trial judge, when he doubts the verity of the allegations of a complaint and of the affidavit in connection therewith, may question the complainant and/or his attorney or agent so that the judge may satisfy himself as to the diligent search, etc., made by the complainant, his agent or attorney in attempting to ascertain the names, residences, etc. of the defendants before resorting to constructive service.
In McDaniel v. McElvy, 1926, 91 Fla. 770, 108 So. 820, at p. 832, 51 A.L.R. 731, the Court, in reference to the contents of the sworn bill of complaint:
“We do not regard the provisions of chapter 11383 as requiring the complainant to allege the facts which support his sworn statement or allegation with reference to interested persons whose names and residences are un *787 known, or his lack of knowledge and his inability to ascertain whether the defendants are dead or alive, so long as such allegations strictly follow the statute. * * * ” (Emphasis supplied.)
We have already determined that a complaint which follows the language of the statute would be sufficient to confer jurisdiction. McDaniel v. McElvy, supra. If the wording of § 66.18 were strictly followed a complaint so worded would ostensibly appear to be made by the complainant. However, it has been established that such a complaint could, nevertheless, be sworn to by the attorney. Tibbetts v. Olson, supra.
In Beverette v. Graham, 1931, 101 Fla. 563, 132 So. 826, affirmed on rehearing 101 Fla. 566, 135 So. 847, 848, the complaint in a partition suit had been sworn to by the attorney when in fact the statute under which the suit was brought required the complaint to be sworn to by the complainant. The appeal was a direct attack on the decree for partition. In reversing the decree the Court in its first opinion held at p. 827 of 132 So.:
“Even though the fact, that the filed bill was sworn to by solicitor for complainant and not by complainant was sufficient to give the court jurisdiction of the complainant and also of the subject-matter (something which we do not decide), it was insufficient to enable the clerk to make an order for publication which would be binding upon nonresident defendants who failed to appear generally in the cause. Here, some of the defendants were nonresidents, against whom decrees pro confesso were entered. We are unwilling to agree that the court had the right under the circumstances to proceed to a final decree adjudicating their rights to the property in question.”
In its opinion written after a rehearing was granted the Court stated in its syllabus at 135 So. 847, 848:
“While a bill of complaint in a partition suit sworn to by the solicitor and not by the complainants is so irregular that a decree for the partition of real estate based thereon will be reversed, such effect does not render the final decree void to the extent that the decree may be collaterally attacked, even by defendants who are brought in as parties to such suit by constructive process based on such bill.”
The opinion itself reads at 848 of 135 So. 847:
“Nothing in the previous opinion which is here reaffirmed should be construed as a holding by this court that a bill of complaint sworn to by the solicitor and not by the complainants, for the partition of real estate, renders a final decree based thereon void to the extent that the decree may be collaterally attacked, even by defendants who are brought in as parties to such suit by constructive process based on such bill. It has been held that a court may possess jurisdiction of a cause, of the subject-matter, and of the parties, but that it is still limited in its mode of procedure and in the extent and character of its judgment which may not be rendered in violation of the prescribed modes of procedure, as against those who raise proper and timely objections to the decree when so made. Johnson v. McKinnon, 54 Fla. 221, 45 So. 23, 13 L.R.A.(N.S.) 874, 127 Am.St.Rep. 135, 14 Ann.Cas. 180.”
The composite result of the two opinions written in Beverette is that even where a statute requires a complaint to be sworn to by the complainant in order to perfect service by publication, when such a complaint is sworn to by the attorney, a decree entered thereon is nevertheless not void to the extent that it may be collaterally attacked.
 The complaint in the Sheffield suit is also assailed on the ground that it did not allege with sufficient particularity the pur *788 ported claim of the Carters which was alleged to constitute a cloud. It is true, as was held in Stark v. Frayer, Fla. 1953, 67 So.2d .237, that a quiet title complaint must not only show title in the plaintiff but also that a cloud exists before relief can be given. We note, however, that the Stark case involved a direct appeal from a decree wherein the chancellor ruled that the plaintiffs failed to state a claim for relief. It is our view, therefore, that an allegation that a claim exsits in a named defendant constituting a cloud, the precise nature of which is not set forth in the complaint, though clearly a voidable defect, is not inimical to the jurisdiction of the court.
In Welborn v. Pierce, 1918, 75 Fla. 667, 78 So. 929, the Court upheld the lower court in sustaining a demurrer to a quiet title complaint. In that complaint the plaintiff had alleged that the exact nature of the alleged interests of unknown defendants was unknown to him. The demurring defendants had appeared in response to service by publication. The Court held at page 931 of 78 So.:
“It was necessary then that the complainant in this cause should, in addition to the allegation that he is the owner in fee simple of the lands involved, have also by proper allegations described the interests of the respondents, setting forth their nature and character and in what way the alleged interests constitute clouds upon his title. The complainant alleges the exact nature of the alleged interests is unknown to him, but he fails to allege any fact to show that they could not have been known to him by the use of ordinary diligence in seeking to ascertain them.
“If the complainant did not know the nature of the alleged interests, and failed upon diligent effort to ascertain the same, then he should in addition to the allegation that the exact nature of the interest, or interests, being to your orator unknown, have also alleged what effort and search he had made to learn the same, and should have prayed for a discovery by the defendants named of the nature and character of such interest, or interests, claimed.
“In this case it is alleged that the complainant believes that there is a person, or persons, having, or claiming to have, some interest, or interests, in the said property whose name, or names, is unknown to him. The interests claimed are alleged to be unknown and the parties alleged as claiming such interests are unknown. How has the complainant learned that there is a cloud ? The bill fails to disclose any reason for the complainant believing that such cloud, or clouds, exist. How from the allegation of the bill of complaint could the court know either the nature of the claim or that there is such a claim of interests by unknown defendants? Suppose a decree pro confesso had been entered as to the unknown defendants and the case had come on for final decree? According to the allegation of the bill of complaint, the complainant, upon whom the burden of proof rested, could not have enlightened the court as the interest, or interests, claimed by the unknown defendants are alleged to be unknown to the complainant. The court could not have known whether the complainant was entitled to relief or not, and therefore could not have granted relief.
“A bill of complaint brought to quiet or remove cloud from title to real estate against unknown defendants should so describe the alleged cloud and show by clear and definite allegations its invalidity as to advise the unknown defendants of the nature of the case they are called upon to meet and that the court may know what decree to render supposing the bill to be true.”
As indicated by the last paragraph quoted above, the purpose of requiring the setting forth of the nature of a cloud sought to be removed from a claimant’s title is to apprise *789 a defendant who reads or responds to service by publication or otherwise of the nature of the case he will be called upon to meet. In the Welborn case, of course, no description of the hostile claim was made in the complaint, nor were the defendants named.
In the Sheffield suit the complaint alleged that the named defendants whose addresses were alleged to be unknown were or might be interested in the subject matter of that suit, to-wit: the premises described ■in the various deeds set forth in the complaint and the description of the land to which title was to be quieted. The only reference to the exact nature of the cloud, however, appearing in paragraph 9, was “some alleged ambiguity or uncertainty in regard to the description or boundaries of the land as contained in one or more of the deeds herein above set forth in plaintiff’s deraignment of title.” Had the parties defendant responded, we feel that such an allegation was sufficiently vague so as to have been susceptible to an order granting a motion for more definite statement. It was not so vague, however, so as to affect the validity of the notice or to prevent the court from acquiring jurisdiction over the parties and the subject matter described.
Furthermore, it is noted that paragraphs 5 and 6 of the Sheffield complaint adequately set forth a valid claim by adverse possession. Having done so, it was only necessary, insofar as title by adverse possession was to be adjudicated, to then set forth the names of the various defendants to show the nature of the hostile claims.
As was held in McDaniel v. McElvy, supra, 108 So. at 830:
“It is unnecessary, however, for the complainant to set out in extenso or to particularly define the title or claim of the defendant. It is sufficient, for purposes of pleading, to allege ultimate facts which show the assertion or existence — actual, apparent or potential— of such hostile title or claim, and its apparent invalidity or inferiority to title of complainant, or to allege the defect in the execution or acknowledgment of the faulty deed or mortgage in the complainant’s chain of title, depending upon which form of allegation is appropriate to the theory of complainant’s suit. * * * ”
Again, in reference to the Sheffield claim by adverse possession, the opinion in the case of Hinely v. Wilson, 1926, 91 Fla. 815, 109 So. 468, is appropriate wherein it held (syllabus 2.) :
“In a suit brought under chapter 11383, Laws of 1925, where the bill of complaint deraigns title into the complainant, and contains appropriate allegations showing the existence of a hostile title, claim, or interest in the defendant, which constitutes a cloud upon complainant’s title, it is unnecessary for the prayer to again enumerate the several clouds or other matters against which relief is sought, and which have already been once sufficiently alleged in the bill of complaint.”
Although the parties have not raised the question, we note that the 1955 Sheffield decree is perhaps voidable upon a sufficient showing as between the parties directly involved therein and any of the subsequent purchasers in sequence from Mrs. Sheffield who are not bona fide. The case of Klinger v. Milton Flolding Co., 1938, 136 Fla. 50, 186 So. 526, involved a bill of review attacking a prior decree in a partition suit. In the partition suit the Milton Holding Company had secured service by publication upon defendant Klinger. After obtaining the relief sought, Milton Holding Company sold the premises in question to one Mrs. Lula J. Lummus. The service by publication which secured jurisdiction over Klinger, a non-resident, in the partition suit was predicated on an affidavit signed by the plaintiff’s attorney that Klinger’s residence was unknown when .in fact it was known to the plaintiff. The affidavit did not state that diligent search and inquiry had been *790 made and the evidence revealed that none had been made. The Supreme Court, on rehearing;, stated at 186 So. 535:
“As above stated, the evidence in the case showed the lack of due diligence as charged, but the affidavit and service by publication being valid and sufficient on the face of the record, the final decree and the action taken thereunder were not absolutely void but merely voidable.
“It follows from whát has been said above, and from the decisions cited, that the foreclosure decree thus attacked was and is clearly voidable at the suit of the appellant Klinger as against the plaintiff in the foreclosure suit, the Milton Holding Company, and the chancellor erred in dismissing appellant’s bill in so far as the Milton Holding Company was concerned, but the question arises, and has been earnestly argued on this rehearing, whether there was any error in dismissing the bill as respects the co-defendant, Mrs. Lula J. Lummus. It is urgently insisted by counsel for Mrs. Lummus, that, at least as to her, the bill was without equity and that the chancellor was justified in dismissing the bill.
“In the case of Moore v. Neil, 39 Ill. 256, 89 Am.Dec. 303, it was held that where a bill in chancery is filed to set aside an administrator’s sale, the proceeding should not, perhaps, be regarded as collateral to the former suit so far as it relates to the parties to that suit, but as to purchasers whose title derived from the sale is sought to be divested it is purely collateral.
“In 35 C.J. at page 94 it is said that: ‘A bona fide grantee from a purchaser at a judicial sale is not affected by irregularities, mistakes, or fraud, of which he did not have notice, although as to the grantor, sale might have been set aside.’ ”
At page 537 of 186 So. the Court held:
“In view of these former holdings of the court, the bill filed by the appellant Klinger clearly entitled him to the relief prayed for as against the defendant Milton Holding Company, if it alone-were concerned, but it does not clearly allege such facts as would clearly show-that plaintiff Klinger was entitled to a. decree cancelling the deed made by Milton Holding Company to Mrs. Lum-mus. The bill does not allege that Mrs. Lummus acquired the title without the payment of any valuable consideration,, or that there was any collusion between-her and the Milton Holding Company, or that she had any notice at the time-she took the deed of any lack of diligence on the part of Milton Holding-Company with respect to the constructive service purported to have been obtained in the foreclosure suit against Klinger.
“While this record does show that: Mrs. Lummus or her attorneys knew the residence address of Klinger im January 1933, this does not necessarily-mean that Mrs. Lummus had that information at the time she purchased the lot: in August, 1932.
“In view of the circumstances of this-case, as disclosed by the record, our conclusion is that our former judgment reversing the decree of the lower court in toto should be adhered to on this rehearing, but that the cause should be remanded with leave to the appellant Klinger, if he be so advised, to amend’ his bill so as to show if he can that Mrs. Lummus was not a purchaser for value and without notice, * *
 The complaint does not allege that either Lowrey or Robinson acquired title-without consideration, nor does it allege-collusion between them and Sheffield, and' neither does it allege that they had notice at the time of their deeds of any of the alleged false statements in the complaint which served the basis for the constructive-service of process, nor any other facts-which would establish them as not being-bona fide purchasers. The allegations es~ *791 tablish the quiet title decree as voidable, but not void. The complaint should have been dismissed as to the defendants, Lowrey and Robinson. In view of the fact that Sheffield does not now own any of the lands in question and the fact that the complaint seeks relief only as to the lands, the complaint should be dismissed as to Sheffield, but without prejudice and with leave to amend.
Reversed.
SMITH and WHITE, JJ., concur.